## DAVIS, Federal Agent, v. McMILLAN.
### (No. 800.)

(Court of Civil Appeals of Texas. Beaumont. April 17, 1922.)

**1. Trial ⬤══352(1) — Special issue whether plaintiff's mules were damaged as alleged by reason of defendant's negligence held sufficient.**

A special issue whether shipper's mules were injured and damaged as alleged in the petition by reason of the negligence of carrier's agents, servants, and employés *held* correct, as against objections of lack of clearness and failure to submit issue of negligence.

**2. Trial ⬤══260(5)—Repetition of definition of negligence not required.**

Where court in general charge defined negligence to which charge no objection was made, it was not necessary to again define it in connection with special issue.

**3. Trial ⬤══351(2)—Where special issue not sufficiently full, complaining party must request issue.**

In shipper's action against carrier if a special issue whether shipment of mules was injured and damaged as alleged in the petition by reason of defendant's negligence was not sufficiently full, defendant's counsel should have requested an issue to meet such fault.

**4. Carriers ⬤══208—Carrier bound, not only to make run in reasonable time, but to handle train with care.**

It is not the only duty resting on a carrier to see that a run between two points is made by ordinary care in a reasonable or usual time required for such run, but it is also required to use due and proper care in handling the train.

**5. Trial ⬤══350(3)—Evidence held to warrant issue on reasonable market value at destination of shipment of mules.**

In a shipper's action against a carrier for damages to a shipment of mules, a special issue, submitting the difference in the market value of the mules at the place of destination if properly carried and also in the condition when delivered to plaintiff's agent, *held* proper; there being evidence sufficient upon such issue.

**6. Carriers ⬤══230(7) — Instruction properly refused as taking from jury issue of negligence and resulting damage to mules after arrival at destination.**

In shipper's action against carrier, wherein it was alleged, and sustained by evidence, that ground of negligence that stock pen gates were left open, so that plaintiff's mules scattered around the town and suffered from cold, bleak weather, decreasing their market value, an instruction that defendant was not responsible for the weather, and, though it was cold at time of their arrival, it could not be considered in finding damages, was properly refused, as taking from the jury such issue as to negligence and damage sustained therefrom.

**7. Appeal and error ⬤══1002—Verdict on conflicting evidence not disturbed.**

Where, in an action against a carrier for damages to a shipment of mules, the evidence conflicted as to their rough handling and damaged condition, the verdict supported by evidence will not be disturbed on appeal.

**8. Carriers ⬤══229(5)—Verdict for $900 for injury to shipment of mules sustained.**

Evidence as to injury to a shipment of mules held to sustain a verdict of $900.

Appeal from District Court, Robertson County; W. C. Davis, Judge.

Action by M. R. McMillan against James C. Davis, Federal Agent, for damages to shipment of mules. Judgment for plaintiff, and defendant appeals. Affirmed.

Henderson & Ranson, of Bryan, J. L. Goodman, of Franklin, and Dabney & King, of Houston, for appellant.

Moorehead & Busch, of Franklin, for appellee.

HIGHTOWER, C. J. The appellee, as plaintiff below, filed this suit in the district court of Robertson county against appellant, as defendant, in his official capacity as Federal Agent, seeking to recover damages in consequence of injuries to a shipment of 22 head of mules from Franklin, Robertson county, Tex., to Brownwood, in Brown county, Tex. It was alleged substantially by appellee that appellant was guilty of negligence by reason of the rough manner in which the shipment of mules was handled, and was also guilty of negligence in failing to transport the shipment within a reasonable time, and was also guilty of negligence in failing to feed and water the mules en route, or to permit the same to be done, and that appellant was also guilty of negligence in permitting the mules to escape from the stock pen at Brownwood, where they were unloaded, in that the gates of the pen were negligently left open, and that the mules, after being unloaded from the car, escaped from the pen through such open gates, and scattered around over the highways around the town of Brownwood, and that at the time the

weather was very cold and severe, and that the mules, by reason of the injuries received on route from the rough handling of the train and the want of feed and water, and the exposure and effects of the bad weather after their escape from the pen at Brownwood, were greatly injured and damaged, and their market value at Brownwood, where they were to be sold, greatly reduced, etc.

Appellant answered by general demurrer and several special exceptions unnecessary here to mention, by general denial, and by a plea of contributory negligence on the part of one D. C. Walker, who was plaintiff's representative and agent, and who accompanied the shipment of mules.

The case was tried with a jury, and the court's charge was in the form of special issues, and upon the jury's answers judgment was rendered in favor of the appellee for $900. After his motion for new trial had been overruled, appellant brought the case to this court, and complains of the verdict and judgment by six assignments of error.

[1-3] The first assignment is that the court erred in his main charge to the jury in submitting special issue No. 1. Special issue No. 1 was as follows:

"Was plaintiff's mules injured and damaged as alleged in his petition, by reason of negligence of the agents, servants, and employés of defendant?"

To this issue the jury answered, "Yes." The objection made to the form of the issue by appellant was:

"Said issue is not clear, and does not submit the issue of negligence, and the negligence is not qualified as to the allegations of the petition; hence the question is likely to mislead the jury."

The proposition under the assignment is:

"The trial court was in error in submitting special issue No. 1 without instructing the jury more specifically as to what would constitute negligence, under the facts in this case."

The court had already properly defined negligence in the charge, and there was no objection to the court's definition of negligence as given the jury. We fail to see wherein the issue, as submitted, was not clear, or wherein it was calculated to mislead the jury in any way. If appellant thought that the form of the issue was not sufficiently full, his counsel should have requested an issue to meet such lack of fullness in that submitted, and, not having done so, appellant cannot complain of the issue as submitted. Certainly, there was nothing incorrect in the issue, either as to form or substance, in so far as it went. The assignment is overruled.

[4] Special issue No. 5 was as follows:

"Did the agents, servants, and employés of defendant, operating the train on the Gulf, Colorado & Santa Fé Railway Company line use ordinary care in shipping and handling the car of mules belonging to plaintiff from Milano Junction to Brownwood, and delivering the same to the agent of plaintiff at Brownwood?"

To this issue the jury answered, "No." Appellant objected to issue No. 5; the objection being as follows:

"Defendant objects to special issue No. 5, wherein the court submits the issue as to the operation of the train on the Gulf, Colorado & Santa Fé Railway Company line from Milano Junction to Brownwood, and delivering same to the agent of plaintiff at Brownwood, Tex., for the reason that same does not submit the question in the case. The question as to ordinary care in shipping said mules over said line would cover the question of the time the said mules were in transit over said line of railway; the carrier is only liable to use ordinary care to make the usual and customary run between the points; hence the court, if he submits this issue at all, should qualify same, under this rule."

The court overruled this objection, and its action in doing so is made the basis of the second assignment. The proposition under the assignment is:

"The trial court should have instructed the jury in connection with special issue No. 5 that defendant, Gulf, Colorado & Santa Fé Railway Company, owed the duty only to exercise ordinary care to make the usual and customary run between the points named."

We are not certain that we clearly understand the contention that appellant makes by this proposition, but we have concluded that it is contended that the jury ought to have been clearly informed by the court that the only duty resting upon appellant was to see that the run between the points mentioned in the issue should be made by the use of ordinary care in a reasonable or the usual time required for such run. If such be the contention, it is clear that it cannot be sustained, because appellant not only owed the duty of making the run within a reasonable time, but was also required to use due and proper care in the handling of the train while making the run. Therefore had the trial court adopted the view of counsel for appellant on this point, and had instructed the jury accordingly, which, however, was not requested, the court would have been in error. We see nothing in the contention, and it is overruled.

[5] Special issue No. 8 was as follows:

"What sum of money will fairly and reasonably compensate plaintiff for the damages to his said mules? You are instructed that in answering this special issue you will take into consideration the difference in the reasonable market value of said mules at the town of Brownwood, Tex., had said mules been handled and shipped with the usual and customary despatch incident to the shipment of live stock, if you find from the evidence that they were not so shipped and handled, and the reasonable

market value of said mules as they were delivered to the agent of the plaintiff at Brownwood, Tex."

The submission of this issue is made the basis of the third assignment of error. The first proposition under the assignment asserts that there was no competent evidence as to the market value of the mules at Brownwood at the time they were delivered there, and the second proposition asserts, substantially, that there was no evidence that there was any unreasonable delay in the shipment of the mules.

As to the first proposition, it is sufficient to say that both the plaintiff, McMillan, and D. C. Walker, who accompanied the shipment of mules as plaintiff's agent, testified that they were acquainted with the market value of such mules as constituted this shipment at Brownwood at the time in question, and both fully testified as to the difference between the market value of these mules had they reached Brownwood within due and reasonable time and in an undamaged condition and their market value in the condition in which they did reach Brownwood, and, according to this evidence, this shipment of mules had been damaged in a sum in excess of the verdict rendered by the jury.

As to the second proposition, that the evidence showed no unusual or unreasonable or negligent delay in the transportation of the mules, we think that the contention finds no support in the evidence on that point. The undisputed evidence, as we find it in the record before us, shows that this shipment of mules, being 22 head, were delivered to the International & Great Northern Railway Company at Franklin, in Robertson county, on Saturday evening between 6 and 7 o'clock on the 30th day of November, 1919. They were loaded into a stock car somewhere about an hour later, and some time during the night, perhaps near midnight or maybe a little after, the shipment moved from Franklin to Milano Junction over the International & Great Northern Railway Company's line. There the car of mules was delivered to and accepted by the Gulf, Colorado & Santa Fé Railroad Company, and from that point on to destination the shipment was handled over the line of the last-named company. There were several special issues in the case relating to the claimed liability of the International & Great Northern Railway Company, but the jury, in answer to these issues, acquitted that company of any negligence whatever. On the journey from Milano Junction to Brownwood, there were several stops made, most of them not more than an hour or so, but when the train reached the town of Goldthwaite, the undisputed evidence shows that the train was delayed, or at least stopped, there for some 12 or 13 hours. There is no explanation in the entire record as to why the train was so long delayed at Goldthwaite; not a single railroad official or employé being called upon to give any explanation of such delay. The proof is also undisputed that during the time the mules were detained at Goldthwaite they were kept in the car without either feed or water. The undisputed proof further shows that the train, after such delay at Goldthwaite, then proceeded on its journey to Brownwood, and reached that point at 10 p. m. on Monday night following their shipment on Saturday before. There is no attempted explanation in the entire record as to why this shipment of mules was so long in transit between Franklin and Brownwood. The undisputed proof is that they were in the car in which they were first placed some 52 hours, without feed or water, and that, although plaintiff's agent, Walker, who accompanied the shipment on several occasions, and especially at Goldthwaite, demanded of the conductor permission to feed and water these mules, and requested that they be unloaded for that purpose, such request was refused, and no feed or water permitted. In view of this undisputed evidence in the record, showing such long delay, especially in the town of Goldthwaite, without attempt at explanation, it cannot be said that there was no evidence in the case showing any unreasonable or unusual or negligent delay on the part of appellant in transporting this shipment of mules. We overrule the assignment.

[6] On the trial of the case, counsel for appellant requested the following special instruction:

"You are instructed that the defendant is not responsible for weather conditions; and, although you may believe that the weather was cold at Brownwood at the time of the arrival of the mules, yet you cannot take into consideration such weather conditions in finding damages for plaintiff."

As we have stated above, one of the grounds of negligence alleged by the plaintiff was that the gates of the stock pen at Brownwood had been left open, and that on account of these open gates the mules escaped from the stock pen and scattered around the town of Brownwood, and that on account of the excessively cold and bleak weather the mules suffered severely and were greatly injured, and their market value greatly depreciated on account of such cold and suffering. There was evidence on behalf of plaintiff fully sustaining this allegation of negligence, and the condition of the weather, as stated. Therefore it would have been improper for the court to have given the special instruction requested, because, the effect of it would have been to tell the jury that plaintiff could not recover anything by reason of any damages or injury to the mules which they suffered in consequence of being out in such weather. In other

words, the special instruction would have taken from the consideration of the jury one of the issues of negligence in the case, and the damage sustained in consequence of such negligence, notwithstanding there was sufficient evidence supporting the issue, as made by the pleading. The charge, as requested, was correctly refused. Of course, appellant was not responsible for the cold weather, and it may be that a special instruction, properly framed, guiding the jury, if necessary, in that connection, might have been properly given, but the instruction as requested was clearly not proper. The assignment is overruled.

[7, 8] By the fifth assignment of error, while it is quite lengthy and there is a good deal of repetition in it, appellant complains, substantially, that the evidence adduced upon the trial was insufficient to show that the mules were to any extent damaged or injured by reason of any negligence as charged by appellee. And by the sixth assignment of error, it is complained, substantially, that the amount of damages awarded by the jury was grossly excessive. We shall dispose of both these assignments together.

The only evidence bearing upon the issue as to the nature of the injuries received by the mules while being transported and that occasioned by their exposure after getting out of the stock pen at Brownwood was that of the plaintiff's agent, D. C. Walker, who accompanied the shipment, and that of the plaintiff, McMillan himself. Walker testified, substantially, that the handling of the mules, after they had been received by the Gulf, Colorado & Santa Fé Railroad Company, was at certain times and at certain points on the line very rough; that because of such rough handling of the train the mules were caused to be bumped against the car in which they were, and that many of them were badly skinned and bruised on their bodies, and the hair rubbed and knocked off, and that because of the great hunger of the mules, by reason of the great length of time that they were without feed, they chewed off each other's tails, and manes, leaving the mules bobtailed and without manes, and that when the mules got out of the stock pen at Brownwood, and were exposed to the weather, they underwent further and extensive suffering, and that in consequence of such rough handling, while in transit, and their exposure to the weather, they became greatly drawn and droopy, and the hair on them looked very bad and rough, and indicated that they had been very much mistreated, and gave them a very unsightly and unfavorable appearance. He admitted that no limbs were broken, but that the mules were considerably scarred and bruised, as above stated, and that in his opinion the market value of these mules had been lessened by one-third by reason of such injuries as he described. This witness further testi-fied that when the mules got out of the pen at Brownwood, the weather was excessively cold; that it was snowing and sleeting, and a norther blowing, and that some time during the night it commenced to rain, and the weather continued to get colder, and that there was very little feed, if any, for the mules to get in the way of grass around the town of Brownwood; that the ground was practically frozen over and covered with ice; that some 6 or 9 of the mules were captured somewhere within an hour after they escaped from the pen, but that all the others remained on the outside, without food, until some 6 or 7 head were captured the next morning, and that during all this time all of the mules were continuously exposed to the weather, which was rapidly growing worse, and that some 3 or 4 of the mules were not captured until a day or two later, and that one of the mules was not found until the following Friday.

Mr. McMillan, the appellee, swore that these mules were in good condition when they left Franklin; that they were young, sound, healthy mules in every way, ranging in size from 14½ to 15½ hands high, and that he had shipped them to Brownwood for sale at that point. He stated, substantially, that about half of the mules were of the larger size and the other half were smaller size, and that the larger size mules, had they reached Brownwood in the condition in which they were when shipped, would have had a market value there of between $550 and $600 a pair, and that the smaller mules, had they reached Brownwood as they should have, would have had a market value of $400 a pair. He testified further that in response to a telegraphic message from his agent, Walker, notifying him of what had happened at Brownwood, he proceeded from Franklin, where he lived, to that point, reaching there either on Thursday or Friday after the mules had arrived there Monday night, and that when he first saw the mules at Brownwood, he at once observed their changed conditions, which he fully explained. According to his testimony, some 7 or 8 of the mules were badly skinned and bruised, and he corroborated the witness Walker in his evidence that the mules had chewed each other's tails and manes off, and that they looked to be in very bad shape, and to present very unsightly appearances, and seemed droopy or stupid, and showed that they had suffered from rough handling en route, and the cold weather to which they had been exposed. He stated that he had shipped the mules to Brownwood to be sold at public auction; that Brownwood was quite a mule point, and this shipment was to be placed in the auction sale, which was to take place Saturday following the mules' arrival there on Monday night. He testified that, when his mules were placed in the auction ring along with other mules that had been trans--

ported and gathered at Brownwood for that purpose, they were at such a great disadvantage in appearance and looks and action with other mules that the bids offered for them by bidders at the sale were so low that he had to buy them in himself, in order to protect himself; that only three of the entire bunch of mules were sold at this auction; that the remainder of them he afterwards shipped to Ballinger for the purpose of improving their conditions, in order that he might dispose of them at their fair market value. He stated that he was quite familiar with the mule business, and kept informed as to the market value of mules generally, and that, while he had not sold any mules or purchased any at Brownwood prior to this occasion, he kept informed as to the market value of mules generally, and that it was his opinion that by reason of the injuries received by these mules in shipment, and the lack of food and water, and the exposure they underwent after reaching Brownwood, as before stated, these mules had been reduced in market value at least one-third.

On the other hand, appellant had some three or four witnesses, who testified that they saw this shipment of mules after they had reached Brownwood, and saw them around the barn where they were put up at auction, and noticed their conditions, and that they discovered no injuries or bruises or skinned places upon these mules, or any of them, with the exception of one mule, and that as to this mule they were of opinion that the skinned place on the root of his tail where the hair was off was caused, not by any bruise or bump that he received in transit, but by reason of some humor in his blood, which had caused the mule to rub himself against the car. All these witnesses for appellant testified, substantially, that they were unable to discover anything from the appearances of the mules that would indicate any rough or unusual handling; that none of them appeared to be crippled in any way, and that, while some of them seemed to be pretty badly drawn, yet their condition in that respect was not at all unusual, and that the condition of these mules, when they were offered for sale at auction, had nothing to do with and did not lessen to any extent their market value. These witnesses for appellant also testified that the tails and manes of these mules had not been chewed off, but that, on the contrary, they had been sheared, as mules usually are sheared, and that nothing was left to be bitten off. These witnesses further testified that the weather was not very cold, as claimed by appellee, and his witness Walker, and that these mules, in the opinion of these witnesses, did not suffer by reason of any exposure to the weather; that said weather was a little cold,

but that there was no ice or snow or sleet or rain. They further testified, substantially, that the fact that the mules escaped from the stock pen caused no injury to them whatever, because they said that there was an abundance of winter grass around Brownwood at the time for mules to eat, and of which they were usually very fond, and that therefore these mules did not suffer for anything to eat while scattered around the town of Brownwood. All this testimony on the part of appellant's witnesses, it will be observed from what we have said above, was practically in direct conflict with appellee's evidence, and that of his witness Walker, in that connection, and it is clear that the issues of fact, to which these assignments relate, were for the jury's determination and decision upon this conflicting testimony, and both such issues were determined by the jury in favor of the appellee. In deference to the jury's verdict, they being the judges of the credibility of the witnesses and the weight to be given to the testimony, we hold that the evidence was sufficient to show that appellee's mules were injured and damaged in consequence of the negligence alleged on the part of appellant, and that the evidence was also sufficient to warrant the verdict of the jury as to the amount found in appellee's favor. Therefore the fifth and sixth assignments are overruled.

This disposes of all assignments, and, finding no reversible error in this case, the judgment of the trial court will be affirmed. It is so ordered.